1  DAVID H. KRAMER, State Bar No. 168452
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   650 Page Mill Road
3  Palo Alto, CA 94304
   Phone: (650) 496-9300
4  Fax: (650) 493-6811
   Email: dkramer@wsgr.com
5
   MICHAEL H. RUBIN, State Bar No. 214636
6  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
7  One Market Plaza
   Spear Tower, Suite 3300
8  San Francisco, California 94105
   Phone  (415) 947-2000
9  Fax    (415) 947-2099
   Email: mrubin@wsgr.com
10
   *Attorneys for Petitioner*
11 GOOGLE INC.

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                       SAN FRANCISCO DIVISION

16 GOOGLE INC.,                         CASE NO.: 15-mc-80208

17        Petitioner,                   CASE IN OTHER COURT:
                                        No.  3:14-cv-00981-HTW-LRA  (S.D.
18        v.                            Miss.)

19 ORRICK,   HERRINGTON   &   SUTCLIFFE  **DECLARATION OF MICHAEL H.**
   LLP,                                 **RUBIN IN SUPPORT OF GOOGLE**
20                                      **INC.'S   MOTION   TO   COMPEL**
          Respondent.                   **COMPLIANCE WITH SUBPOENA**
21
                                        Date:     TBD
22                                      Time:     TBD
                                        Judge:    TBD
23

24

25

26

27

28

RUBIN DECLARATION

I, MICHAEL H. RUBIN, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner with the law firm Wilson Sonsini Goodrich & Rosati, attorneys for Petitioner Google Inc. ("Google"). I submit this affidavit in support of Google's Federal Rule of Civil Procedure 45 Motion to Compel Compliance with Subpoena. The following facts are true of my personal knowledge and if called and sworn as a witness I could competently testify to them.

2.      Along with others at my firm, I have been involved with Google's efforts to obtain discovery from third parties to support its claims against Mississippi Attorney General Jim Hood ("AG Hood") in *Google Inc. v. Hood* (3:14-cv-00981-HTW-LRA, S.D. Miss.) ("*Google Inc. v. Hood*"). To date, Google has served eight similar subpoenas on third parties:

      a.   A March 12, 2015 subpoena served on the law firm of Jenner & Block ("Jenner").

      b.   A March 12, 2015 subpoena served on the Motion Picture Association of America, Inc. ("MPAA").

      c.   A March 12, 2015 subpoena served on Twenty-First Century Fox, Inc. ("Fox").

      d.   A March 12, 2015 subpoena served on Viacom, Inc. ("Viacom").

      e.   A March 12, 2015 subpoena served on NBCUniversal Media, LLC ("NBC").

      f.   A March 12, 2015 subpoena served on the Digital Citizens' Alliance ("DCA").

      g.   A May 12, 2015, subpoena served on the Recording Industry Association of America ("RIAA").

      h.   A May 21, 2015 subpoena served on the law firm of Orrick, Herrington & Sutcliffe LLP ("Orrick") that set a compliance date of June 8, 2015, a true and correct copy of which is attached hereto as Exhibit 1.

3.      These subpoenas were served on Jenner, the MPAA, the DCA, and the RIAA in the District of the District of Columbia, on Fox, Viacom, and NBC in the Southern District of New York, and on Orrick in this district.

4.      The subpoenas served on Jenner, the MPAA, the DCA, and Orrick are each virtually identical. The subpoenas served on Fox, Viacom, NBC, and the RIAA are also each virtually identical, although they are more narrow than the subpoenas served on the MPAA, Jenner, the DCA, and Orrick.

5. In response to Google's subpoenas, the subpoenaed parties, including Orrick, have all asserted similar, and in most cases identical objections. They have all asserted the same relevance objection regarding their internal documents and communications with parties other than AG Hood, and they have made similar privilege claims over materials not shared with AG Hood. Other than Orrick, each subpoenaed party agreed to produce its communications with AG Hood, subject to requests for protective orders and other objections. Ultimately, however, each of them produced those documents without a protective order having been entered. And in each case, review of their limited productions have identified deficiencies.

6. After repeated efforts to convince the subpoenaed parties to withdraw those objections and produce the documents requested by Google's subpoenas, including extensive correspondence and meet-and-confers with each party, the parties remained at an impasse.

7. On June 1, 2015, Google brought Motions to Compel against Jenner, the MPAA, and the DCA in the District of the District of Columbia. On the same day, Google brought Motions to Compel against Fox, Viacom, and NBC in the Southern District of New York.

8. Only after Google filed these motions did these parties produce any documents. It was in the weeks following the filings that they began producing their communications with AG Hood. They indicated that they were not withholding any communications with AG Hood on the grounds of privilege.

9. Within days of filing the motions to compel, on June 4, 2015, Google brought Rule 45(f) Motions to Transfer its Motions to Compel to the court in Mississippi against the six parties in the District of the District of Columbia and the Southern District of New York.

10. The court in the Southern District of New York held a hearing on July 29, 2015 regarding the Motion to Compel and the Rule 45(f) Motion to Transfer. At the hearing, the court granted Google's Rule 45(f) Motion to Transfer.

    a. A true and correct copy of the transcript of the July 29, 2015 hearing is attached hereto as Exhibit 2.

    b. A true and correct copy of the court's July 29, 2015 written order granting Google's Rule 45(f) Motion to Transfer is attached hereto as Exhibit 3.

11.     The court in the District of the District of Columbia held a hearing on July 8, 2015 regarding Google's Rule 45(f) Motion to Transfer. On July 31, 2015, the court granted that motion.

a.   A true and correct copy of the court's July 31, 2015 order granting transfer is attached hereto as Exhibit 4.

b.   A true and correct copy of the court's July 31, 2015 memorandum opinion in support of the order is attached hereto as Exhibit 5.

**Orrick's Subpoena Objections and the Meet and Confer Process**

11.     On June 5, 2015, my partner, David Kramer, received an email from William Alderman, counsel for Orrick, requesting an extension of the compliance date to June 15, 2015. We told Mr. Alderman that there was a limited discovery window in the underlying case, but as a gesture of good faith we extended the compliance date of the subpoena to June 15, 2015. A true and correct copy of the June 5 email exchange with William Alderman of Orrick is attached hereto as Exhibit 6.

12.     On June 15, 2015, Mr. Kramer received a letter setting out Orrick's objections to the subpoena. In the cover email that accompanied this letter, Mr. Alderman indicated that, pursuant to the objections, Orrick would not be producing any documents in response to the subpoena. A true and correct copy of the cover email and objections from Mr. Alderman is attached hereto as Exhibit 7.

13.     On June 26, 2015, I met and conferred with Mr. Alderman by phone regarding Orrick's objections to the May 21 subpoena served by Google. Among the positions he took on that call were that anything sent to AG Hood by Orrick was done at AG Hood's request and was therefore protected by law enforcement and common interest protections, though he said he would reconfirm that this was in fact Orrick's position. Mr. Alderman said that the common interest at issue was the common interest in accommodating AG Hood's request. He did not identify any anticipated litigation to support Orrick's assertion of work product privilege, and he confirmed that Orrick had no attorney client relationship with AG Hood. In response to questions about the burden faced by Orrick, Mr. Alderman said he would get back to me with the total number documents

1   identified by Orrick's initial search. Mr. Alderman also confirmed that Orrick would not be pro-

2   ducing any documents in response to the subpoena. Mr. Alderman said he would follow up with

3   the number of documents and Orrick's position regarding its communications with AG Hood by

4   the next business day, June 29, 2015.

5          14.      Mr. Alderman in fact responded by email on July 2, 2015. He stated that Orrick's

6   preliminary search had identified some 18,000 documents. He also confirmed that Orrick was

7   standing by its position that all of its communications with AG Hood were in response to requests

8   from AG Hood and his office and were therefore privileged. A true and correct copy of Mr. Al-

9   derman's July 2, 2015 email is attached hereto as Exhibit 8.

10          15.      On July 13, 2015, I responded via letter to Mr. Alderman. My letter urged Orrick to

11   reconsider its positions on privilege, particularly in light of the fact that all of the other subpoe-

12   naed parties recognized that there was no privilege applicable to their communications with AG

13   Hood. My letter also asked Orrick to provide the list of custodians and search terms it had used to

14   arrive at the number of documents it had mentioned, and it urged Orrick to produce documents

15   requested by the subpoena without delay. I asked for a response to my letter by July 17, 2015. A

16   true and correct copy of my July 13, 2015 letter is attached hereto as Exhibit 9.

17          16.      On July 21, 2015, Mr. Alderman responded by email, saying that he had been out

18   of the office the previous week and he hoped to respond to our letter the next day. Orrick has nev-

19   er responded to my July 13 letter. A true and correct copy of Mr. Alderman's July 21, 2015 email

20   is attached hereto as Exhibit 10.

21          17.      On July 31, 2015, I sent Mr. Alderman a letter explaining that because of Orrick's

22   continued pattern of delay, its refusal to substantiate its positions or produce any documents, and

23   the looming discovery deadline in the case, Google would be bringing a Motion to Compel. I also

24   informed him that Google would be bringing a Rule 45(f) Motion to Transfer, and that if I did not

25   hear back from him by noon on August 3, 2015, Google would assume Orrick intended to oppose

26   that motion. A true and correct copy of my July 31, 2015 letter is attached hereto as Exhibit 11.

27          18.      On August 3, 3015, I spoke with Mr. Alderman by phone. He asked that Google

28   not file its Rule 45(f) Motion to Transfer concurrently with its Motion to Compel, but instead

1    bring the Motion to Transfer a few days later. During that time Mr. Alderman said Orrick would

2    review the case law and decisions of the courts in New York and the District of Columbia and de-

3    cide whether it would oppose the motion. He also said that he would accept electronic service of

4    Google's Motion to Compel papers.

5

6    **Productions by Other Subpoenaed Parties and Attorney General Hood**

7         19.    On June 12, 2015, Jenner produced 295 documents to Google in response to

8    Google's subpoena.

9         20.    During the meet and confer process, Jenner stated that it would not produce docu-

10   ments without a protective order being in place. Google was clear that it would not agree to a pro-

11   tective order absent a showing that one was called for, and Jenner did not make that showing.

12   Even though no protective order had issued, Jenner produced a small set of documents. In connec-

13   tion with its production, Jenner purported to impose conditions on the use of the documents, in-

14   cluding by labeling them "confidential." I advised Jenner counsel that, as I had told them during

15   the parties' meet-and-confer, Google had not agreed to be bound by those conditions and would

16   not abide by them. I received no response to that communication.

17        21.    Jenner's June 12 production is Bates Numbered JB_00000001 through

18   JB_00000629. These documents consist of email communications that included AG Hood or his

19   staff and a Jenner custodian, as well as documents attached to those emails (some of which Jenner

20   says it withheld at the request of AG Hood).

21             a.  Attached hereto as Exhibit 12 is a true and correct copy of a January 15, 2014 email

22                 exchange between Brian Moran of Orrick, Rob McKenna of Orrick, Mary Jo

23                 Woods of AG Hood's office, Blake Bee of AG Hood's office, and others that was

24                 produced by Jenner and Bates Numbered JB_00000546-547.

25             b.  Attached hereto as Exhibit 13 is a true and correct copy of a June 4, 2014 email ex-

26                 change between Rob McKenna, AG Hood, Brian Moran, and Thomas Perrelli of

27                 the MPAA that was produced by Jenner and Bates Numbered JB_00000400-401.

28

c.   Attached hereto as Exhibit 14 is a true and correct copy of a January 16-17, 2014 email exchange between Rob McKenna, AG Hood, Brian Moran, Thomas Perrelli, and others that was produced by Jenner and Bates Numbered JB_00000014-16.

d.   Attached hereto as Exhibit 15 is a true and correct copy of a January 15, 2014 email exchange between Rob McKenna, AG Hood, Brian Moran, Thomas Perrelli, and others that was produced by Jenner and Bates Numbered JB_00000555-557.

e.   Attached hereto as Exhibit 16 is a true and correct copy of a June 4, 2014 email exchange between Rob McKenna, AG Hood, and Thomas Perrelli that was produced by Jenner and Bates Numbered JB_00000399.

f.   Attached hereto as Exhibit 17 is a true and correct copy of a February 21, 2014 email exchange between Mary Jo Woods, Rob McKenna, Brian Moran, and others that was produced by Jenner and Bates Numbered JB_00000333-334.

g.   Attached hereto as Exhibit 18 is a true and correct copy of a March 8, 2014 email exchange between Rick Smotkin of Comcast,  Rob McKenna, Brian Moran, and others that was produced by Jenner and Bates Numbered JB_00000390-391.

h.   Attached hereto as Exhibit 19 is a true and correct copy of a September 29, 2014 email exchange between Angie Cossitt of the Mike Moore Law Firm, Thomas Perrelli, Brian Moran, Mary Jo Woods, Blake Bee, and others that was produced by Jenner and Bates Numbered JB_00000457.

22.   On June 22, 2015, the MPAA produced documents in response to Google's subpoena.

23.   In a June 15, 2015 message in which the MPAA indicated that it was prepared to produce a limited set of documents, it expressly made the production contingent upon Google's agreement to "treat such documents as Confidential pending the resolution of Google's motion to compel and MPAA's request for a protective order in this matter," such that the documents "not be disclosed publicly or used in any respect for any purpose outside of this litigation."  Google agreed to keep the documents confidential.

24.     After reviewing the production, Google told the MPAA that it did not believe the documents were entitled to confidential treatment. The MPAA has subsequently withdrawn its request for confidential treatment over nearly all of the documents, including all documents attached to this declaration.

25.     The MPAA's June 22 production is Bates Numbered MPAA00000001 through MPAA00003095. These documents consist of email communications that included AG Hood or his staff and a MPAA custodian, as well as documents attached to those emails (some of which the MPAA says it withheld at the request of AG Hood).

     a.   Attached hereto as Exhibit 20 is a true and correct copy of a January 20, 2014 email exchange between AG Hood, Vans Stevenson of the MPAA, Rob McKenna, and others that was produced by the MPAA and Bates Numbered MPAA00001998.

     b.   Attached hereto as Exhibit 21 is a true and correct copy of a November 25, 2013 email exchange between AG Hood and Brian Cohen of the MPAA attaching an invitation for a fundraising dinner for AG Hood that was produced by the MPAA and Bates Numbered MPAA00001576-1577.

26.     Starting in April of 2015 and continuing on a rolling basis, AG Hood has produced documents in response to Google's discovery requests.

27.     AG Hood's production is Bates Numbered D000001 through D001657. These documents consist of email communications that included AG Hood or his staff and various third parties, as well as documents attached to those emails.

     a.   Attached hereto as Exhibit 22 is a true and correct copy of the privilege log accompanying AG Hood's April 15, 2015 production.

     b.   Attached hereto as Exhibit 23 is a true and correct copy of the privilege log accompanying AG Hood's April 28, 2015 production.

     c.   Attached hereto as Exhibit 24 is a true and correct copy of a March 27, 2013 email exchange and attachments between Meredith Aldridge of AG Hood's office, Blake Bee, and Brian Cohen of the MPAA that was produced by AG Hood and Bates Numbered D000904-908.

d.  Attached hereto as Exhibit 25 is a true and correct copy of a June 22 to July 9, 2013 email exchange between Rob McKenna of Orrick, Jack Evans and John Kelly of Microsoft, AG Hood, and others that was produced by AG Hood and Bates Numbered D001319-1323.

e.  Attached hereto as Exhibit 26 is a true and correct copy of an August 17-20, 2013 email exchange between Rob McKenna, AG Hood, Melanie Webb of AG Hood's office and others that was produced by AG Hood and Bates Numbered D001641-1645.

f.  Attached hereto as Exhibit 27 is a true and correct copy of a January 20, 2014 email exchange between Rob McKenna, AG Hood, and others that was produced by AG Hood and Bates Numbered D001338-1339.

g.  Attached hereto as Exhibit 28 is a true and correct copy of an October 24, 2013 email exchange between Vans Stevenson and AG Hood that was produced by AG Hood and Bates Numbered D000069.

h.  Attached hereto as Exhibit 29 is a true and correct copy of a September 17, 2013 email exchange between Vans Stevenson and numerous people that was produced by AG Hood and Bates Numbered D000081-85.

**Authentication of Other Exhibits**

28.     Attached hereto as Exhibit 30 is a true and correct copy of Judge Wingate's March 2, 2015 Order granting Google's Motion for Temporary Restraining Order and granting Google's Motion for Preliminary Injunction in *Google Inc. v. Hood*.

29.     Attached hereto as Exhibit 31 is a true and correct copy of Judge Wingate's March 27, 2015 Order denying AG Hood's Motion to Dismiss and granting Google's Motion for Temporary Restraining Order and Preliminary Injunction in *Google Inc. v. Hood*.

30.     Attached hereto as Exhibit 32 is a true and correct copy of Judge Wingate's April 10, 2015 Order on *Ore Tenus* Discovery Motion in *Google Inc. v. Hood*.

31.     Attached hereto as Exhibit 33 is a true and correct copy of the transcript containing AG Hood's remarks from the June 2013 meeting of the National Association of Attorneys General.

* * *

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct. Executed on August 3, 2015 in San Francisco, California.


By: /s/ *Michael H. Rubin*
Michael H. Rubin